UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOTBALANCE SYSTEM INC. and FOOTBALANCE SYSTEM OY,<br><br>        Plaintiffs,<br><br>v.<br><br>ZERO GRAVITY INSIDE, INC.; ROADRUNNER SPORTS, INC.; ZENA IOVINA/IOVINO; PATRIK LOUKO; SASHA HANNON; and EERO KAAKKOLA,<br><br>        Defendants. | Case No.: 15-CV-1058 JLS (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>(ECF No. 31) |

   Presently before the Court is Defendants Patrik Louko and Eero Kaakkola's (collectively the Moving Defendants) Motion to Dismiss Second Amended Complaint. (MTD, ECF No. 31.) Also before the Court are Plaintiffs FootBalance Systems Inc. and FootBalance Systems OY's (collectively FootBalance) Opposition to, (ECF No. 33), and the Moving Defendants' Reply Supporting, (ECF No. 34), the MTD. The Court vacated the hearing on this motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 35.)

   For the reasons stated below, the Court **GRANTS** the Moving Defendants' MTD with respect to FootBalance's direct infringement claims and **DENIES** the MTD with

respect to FootBalance's indirect infringement claims.[1]

## BACKGROUND

### I.   Factual Background

FootBalance is a health and fitness company that sells individually formed footwear. (SAC ¶ 14.) It owns U.S. Patent Nos. 7,793,433 and 8,171,589, both of which cover inventions related to custom orthotic insoles and a method for providing and customizing these insoles. (*Id.* at ¶¶ 15–20.) Per an agreement entered into in December 2008, FootBalance sold these patented insoles to retailer Road Runner Sports, Inc. (RRS), which then sold them to consumers using FootBalance's patented method to custom fit the insoles to the consumers' feet. (*Id.* at ¶ 24.) RRS later canceled this agreement to work with a different custom insole supplier, defendant Zero Gravity Inside, Inc. (ZGI). (*See id.* at ¶ 25.)

ZGI was founded by, among others, Louko, one of the Moving Defendants, who also served as the company's president and chief executive officer. (*Id.* at ¶¶ 4, 9, 25.) Before founding ZGI, Louko was a consultant and eventually chief executive officer at FootBalance, where he participated with RRS in selling FootBalance's products to RRS until he left the company in 2010. (*Id.* at ¶¶ 4, 9, 26, 28.) Kaakkola, the other Moving Defendant, is a former deputy board member of ZGI. (*Id.* at ¶ 5.) ZGI was incorporated on January 3, 2014. (*Id.* at ¶ 32.)

ZGI's sales appear not to have been limited to RRS, however, as indicated by its sales figures that "exceed the number of custom insoles likely purchased by RRS." (*Id.* at ¶ 35.) For example, ZGI announced that it sold 650,000 units in the year-and-a-half from May 2014 to November 2015. (*Id.*) Based on its own experience in the custom insole market, that amount of sales "vastly outnumbers the sales RRS could generate during an

---

[1] The Court notes that the SAC groups its two claims for relief by patent, rather than by particular theories of liability, such as liability for direct infringement, induced infringement, or contributory infringement. This Order refers to "claims" as "a set of facts that, if established, *entitle the pleader to relief*." James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:188 (Thomson Reuters/The Rutter Group 2016) (emphasis in original) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

18-month window." (*Id.*)

FootBalance has arbitrated a dispute with RRS, and ZGI is not a party to that arbitration. (*See id.* at 8, n.2.) FootBalance states that documents produced in that arbitration show that ZGI, Louku, and Kaakkola had pre-suit knowledge of FootBalance's patents, but that FootBalance cannot produce them in this litigation because they are covered by a protective order and ZGI—although not a party to that protective order—has objected to their use in this case. (*Id.*)

## II. The Court's Prior Dismissal Order

In its February 8, 2016 Order, the Court granted four individual defendants'—Zena Iovino, Louko, Sasha Hannon, and Kaakkola's—motion to dismiss, concluding that the First Amended Complaint (FAC) did not plead specific facts showing those defendants infringed, induced infringement, or contributed to infringement of FootBalance's patents. (ECF No. 28, at 5–8.) The Court did not resolve whether the relaxed Form 18 pleading standard or the more demanding *Twombly*/*Iqbal* pleading standard governed FootBalance's direct infringement claims because the Court concluded that the FAC's factual allegations fell short under either standard. (*Id.* at 6–7.) Because indirect infringement is predicated on the existence of direct infringement, the Court also concluded that the FAC did not adequately plead the indirect infringement. (*Id.* at 8.) Noting that FootBalance may be able to cure these deficiencies, the Court granted leave to amend. (*Id.*)

FootBalance filed its SAC on February 22, 2016, this time naming only ZGI, Louko, and Kaakkola as defendants. (SAC ¶¶ 3–5.)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must dismiss complaints that "fail[] to state a claim upon which relief can be granted." The Court evaluates whether a complaint supports a cognizable legal theory and states sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In patent cases, courts previously looked to Federal Rule of Civil Procedure 84, which in turn referred to "forms in the

Appendix." *See Rembrandt Patent Innovations LLC v. Apple Inc.*, Nos. C 14-05094 (WHA), C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015); *In re Bill of Lading*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) ("[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control."). One form in the Appendix was Form 18, an example complaint for patent infringement that "merely included an allegation that the defendant infringed the asserted patent by making, using, or selling 'electric motors' without specifying the model of the accused motors." *Rembrandt Patent*, 2015 WL 8607390, at *2. The 2015 Amendments to the Federal Rules, which the Supreme Court submitted to Congress in April 2015 pursuant to 28 U.S.C. § 2072, abrogated Rule 84, with the notation that it was "no longer necessary." *See* Fed. R. Civ. P. 84 advisory committee's note to 2015 amendment; *RAH Color Techs. LLC v. Ricoh USA Inc.*, No. 2:15-CV-05203-JCJ, 2016 WL 3632720, at *2 (E.D. Pa. July 7, 2016). The 2015 Amendments took effect December 1, 2015. *See* Fed. R. Civ. P. 84; *RAH Color Techs. LLC*, 2016 WL 3632720, at *2.

The abrogation of Rule 84 means that the Rule 8 pleading standards as construed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) govern in patent cases. *See, e.g.*, *Rembrandt Patent*, 2015 WL 8607390, at *2; *Rah Color Techs. LLC*, 2016 WL 3632720, at *3 ("Following the reasoning of *In re Bill of Lading*, it appears the Federal Rules' amendment abrogating both Rule 84 and the Appendix of Forms means that claims of direct infringement are now also subject to the *Twombly*/*Iqbal* pleading standard.").

FootBalance filed this action on May 11, 2015, and filed its SAC on February 22, 2016. (*See* ECF Nos. 1 & 29.) "In general, 'when amended procedural rules take effect during the pendency of a case, the amended rules will be given retroactive application to the maximum extent possible, unless doing so would work injustice.'" *Rah Color Techs. LLC*, 2016 WL 3632720, at *3. FootBalance contends that it would be "Unjust and Impracticable" to apply a pleading standard other than that provided in Form 18 because

FootBalance filed this action six months before the abrogation of Rule 84. (Opp'n at 15–16.)

Although the Court did not need to decide whether the Rule 84/Form 18 or *Twombly/Iqbal* pleading standard governed pleading of FootBalance's direct infringement claim in its FAC, Rule 84 had been abrogated by the time FootBalance filed its SAC. The Court is not convinced that holding FootBalance's complaint for patent infringement to the same standard as nearly every other civil action filed in federal court would be unjust or impracticable. That is particularly so given that the Court left the question open as it pertained to FootBalance's complaint that was filed before the 2015 Amendments took effect. (*See* Order, ECF No. 28, at 6–7.) In any event, because dismissal with prejudice is not warranted here, any possible unfairness to FootBalance would be cured by granting leave to amend. The Court therefore applies the pleading standards explained in *Twombly/Iqbal* to FootBalance's direct infringement claims presented in its SAC.[2] *See RAH Color Techs. LLC*, 2016 WL 3632720, at *1, *6 (applying *Twombly/Iqbal* standard to counterclaims where complaint that initiated action was filed September 17, 2015, and counterclaims were filed in May 2016 in response to amended complaint); *see also Polaris Indus., Inc. v. Arctic Cat Inc.*, No. CV 15-4129 (JRT/LIB), 2016 WL 3541541, at *1 (D. Minn. June 23, 2016) (holding that the Rule 84/Form 18 standard controlled for a complaint filed in November 2015, before the 2015 Amendments took effect in December 2015).

Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it

---

[2] The parties agree that the *Twombly/Iqbal* standard applies to FootBalance's claims for indirect infringement.

5

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

///

# ANALYSIS

## I. Direct Infringement by Moving Defendants

When officers of a corporation are charged with direct infringement, "the 'corporate veil' shields" them from personal liability for acts they "commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (citing *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007)). The Moving Defendants contend that FootBalance's claims against them must be dismissed because the SAC does not contain facts plausibly showing them to be personally liable through an alter ego theory or because of acts of infringement not committed in the name of ZGI.

### A. *Infringement Prior to ZGI's Incorporation*

The Moving Defendants argue FootBalance's SAC contains no well pleaded facts showing Louko or Kaakkola directly infringed its patents before ZGI's incorporation.

FootBalance counters that it not only provided "specific model names of infringing products, but also detail[ed] the infringement of a claim from each of the Asserted Patents on an element-by-element basis," including by identifying the "type of thermoplastic used in the Accused Products (amorphous polyethylene terephthalate), and specific equipment used to create the Accused Products (ZGI's molding pillows and ovens)." (Opp'n at 19 (citing SAC ¶¶ 59, 69).) Notably, however, the Moving Defendants are not arguing in their MTD that the SAC does not allege that the accused products infringe FootBalance's patents or that it does not state a direct infringement claim against ZGI, but instead that the SAC does not *show* that the Moving Defendants made, used, offered to sell, or sold the allegedly infringing products before ZGI's incorporation, such that they would be individually liable for infringement. *See* 35 U.S.C. § 271(a).

The Federal Circuit recently emphasized "the particular need to apply the plausibility standard with a recognition that direct evidence of some facts . . . may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence." *ABB Turbo Sys. AG v. Turbousa,*

*Inc.*, 774 F.3d 979, 988 (Fed. Cir. 2014) (citing Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 679; *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 & n.15 (2011)).

Whether Louko or Kaakkola made, used, offered to sell, or sold the allegedly infringing insoles or instructed retailers as to the allegedly infringing custom fitting process before ZGI incorporated in May 2014 is largely information within the Defendants' possession. Using publicly available information, however, FootBalance has discovered that "ZGI . . . sold more than 650,000 units" of the allegedly infringing product from May 2014 to November 2015. (SAC ¶ 35.) In its Opposition, FootBalance explains the significance of selling (and presumably manufacturing) this quantity of units by that date:

> The mass production of infringing products by ZGI, including creation of the entire molding system used at retailers, requires the unimaginative inference that Louko and Kaakkola began making, using, selling, and/or offering to sell infringing insoles long before the four months between ZGI's date of incorporation in January 2014 and the start of the sales in May 2014.

(Opp'n at 20.) However, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). While the explanation in FootBalance's Opposition could nudge its claim toward plausible entitlement to relief, the information needed to draw this inference is not in the SAC. Despite FootBalance's current spin, the SAC only states that ZGI sold these units in an 18-month window of time, and nothing in the SAC shows that sales and production likely occurred before January 2014—the date of incorporation—which consequently stretches the time window an additional five months. To the contrary, FootBalance's SAC contains only a conclusory allegation that "[u]pon information and belief, Louko and Kaakkola began making, using, selling, and offering for sale custom insoles to RRS before ZGI was incorporated." (SAC ¶ 32.) The SAC therefore lacks sufficient "circumstantial" factual allegations to which the Court may apply "the threshold standard of plausibility." *ABB Turbo Sys. AG*, 774 F.3d at 988.

///

FootBalance also argues that it "is entirely plausible that Defendants have infringed by making, using, selling, or offering for sale individually formed footwear outside of their activities at ZGI," for example "by using an individually formed insole in a shoe." (Opp'n at 17–18.) FootBalance does not cite the SAC to support this idea, but apparently suggests that someone reading the SAC might assume that to be the case. (*See id.*) Absent a well-pleaded fact on this point, however, the Court does not assume that to be the case.[3]

Accordingly, FootBalance has not adequately alleged direct infringement against Louko or Kaakkola based on infringement before ZGI's incorporation or otherwise committed not in the name of ZGI.

### B. *Alter Ego Liability*

FootBalance also alleges that ZGI is simply Louko and Kaakkola's alter ego, and that they should not be shielded from individual liability by the corporate veil.

Generally speaking, the corporate veil protects officers of a corporation from personal liability unless the corporation is simply the officers' alter ego. *See Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). In patent cases, federal district courts apply the alter ego law of the regional circuit. *See Wechsler*, 486 F.3d at 1295 (citing *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004)). The Ninth Circuit applies the law of the forum state to determine whether a corporation is the alter ego of an individual. *See id.* (citing *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993)). Thus, this Court looks to California alter ego law.

Under California law, a corporation may be deemed a particular person's alter ego, and therefore justify piercing the corporate veil, if: (1) there is "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist" and (2) there would "be an

---

[3] This allegation could support an argument that personal use of an infringing insole is not in the name of the corporation, such that the corporate veil would not shield the Moving Defendants from liability. The Court does not address this notion because the SAC contains no allegations to support it.

inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000); *see also Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977)).  When analyzing whether a corporation is the alter ego of an individual, courts consider various factors, including: the "commingling of funds and other assets of the two entities," inadequate capitalization, and disregard of corporate formalities, among others.  *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538–39.  "Alter ego is an extreme remedy, sparingly used."  *Id.* at 539.  Courts look to "all the circumstances to determine whether the doctrine should be applied."  *Id.*

Following the Supreme Court's instructions in *Iqbal*, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  556 U.S. at 679.  The SAC pleads the following conclusions:

- "ZGI operates as the alter ego of Louko"
- "ZGI and Louko have a unity of interest and ownership such that ZGI is not a separate entity from Louko."
- "FootBalance would face an inequitable result if the actions taken by Louko would be treated as ZGI's alone."
- "ZGI has identical equitable ownership as Louko, as ZGI is controlled and dominated by Louko."
- "ZGI disregards corporate formalities."
- "Upon information and belief, ZGI does not conduct regular board meetings, does not conduct regular shareholder meetings, and does not issue stock."[4]
- "Louko uses ZGI corporate accounts and assets for personal purposes."
- "ZGI has been and continues to be undercapitalized. Upon information and belief, ZGI lacks sufficient capital to cover debts, including liability from its infringement of the '433 and '589 Patents."
- "Upon information and belief, Louko lacked sufficient capital to start ZGI.  Upon information and belief, ZGI continues to lack minimal capitalization."

---

[4] The "factors" courts consider in the alter ego doctrine necessarily look for the presence of certain "facts." Pleading the presence of a factor, therefore, on some level pleads the existence of a fact.  While in some circumstances, an allegation that a corporation does not hold board meetings may fall into the "well-pleaded fact" category rather than the "conclusory statement" category, its inclusion among a list of other conclusory allegations evidences a lack of specificity that does not advance FootBalance's alter ego theory from merely possible to plausible.

- "Louko uses ZGI as a mere shell for his personal business."

(SAC ¶¶ 48–52.) The distinction between mere conclusions or recitations of elements and well-pleaded facts can, at times, be elusive. The majority of these allegations, however, simply mimic the factors courts consider when determining whether to pierce the corporate veil, and stated in that manner are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679. These allegations lack any sort of case-specific detail that demonstrates, for example, that ZGI is not adequately capitalized to meet its financial obligations, or instances in which Louko used ZGI's corporate accounts for personal purposes. This information is obviously difficult to obtain, but if FootBalance has a good reason to seek to hold Louko and Kaakkola, as opposed to simply ZGI, liable, it must be able to articulate facts—whether based on circumstantial or direct evidence that it has uncovered—plausibly supporting a conclusion of liability.

The lone well-pleaded fact FootBalance alleges to bear out these conclusions is that "[p]ublicly available financial information indicates that Louko withdrew approximately 1.2 million EUR" and Kaakkola "withdrew approximately 700,000 EUR from ZGI within a year of ZGI's incorporation." (SAC ¶ 52.) The SAC indicates that this withdrawal "represents a substantial portion of ZGI's operational revenue from 2014 and exceeds ZGI's profits for 2014." (*Id.*) However, "when determining whether inadequate capitalization exists such that alter ego liability would be appropriate, courts generally look to facts or allegations related to an entity's liabilities and assets." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1142 (C.D. Cal. 2015). This sort of context is necessary to understand why a withdrawal of that amount would render a corporation inadequately capitalized. *See id.* FootBalance alleges no facts on this point and, as the Moving Defendants point out, even though FootBalance states that this amount exceeds profits for the year, it is equally possible, for example, that "Louko may have simply loaned ZGI start-up funds and is entitled to repayment." (MTD at 13 (citing *Gerritsen*, 116 F. Supp. 3d at 1142).) That Louko and Kaakkola collectively withdrew an amount that exceeds ZGI's profits for the year does not plausibly warrant the "extreme remedy" of an

alter ego finding.

In some sense, a complaint tells a story of liability. As in other storytelling, showing is often more important than simply telling. FootBalance has *told* the Court that the Moving Defendants are liable under an alter ego theory, but it has not *shown* they are liable. The Moving Defendants' MTD is therefore **GRANTED** with respect to FootBalance's claims for direct infringement.

## II.     Indirect Infringement

### A.     *Induced Infringement*

Unlike direct infringement, the corporate veil does not insulate corporate officers from liability for induced infringement. *Insituform Techs.*, 385 F.3d at 1375 ("[I]t is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer.") (quoting *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986)).

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim for induced infringement, a patentee must show first "that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1353–54 (Fed. Cir. 2008) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)). As to the second prong, the requisite specific intent is not that the defendant intended "to cause the acts that produce direct infringement," but instead that the inducer had "an affirmative intent to cause direct infringement." *Id.* at 1354 (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)).

First, the SAC shows direct infringement by ZGI and RRS. In particular, the SAC explains how the accused products (insole "blanks") and process of customization infringe FootBalance's patents and that ZGI has sold the blanks and instructed RRS to use the infringing customization process. (SAC ¶¶ 34, 35, 55, 69.) The SAC also shows that RRS

has sold the insoles using the infringing method. (*Id.* at ¶ 31.) By explaining how the products and methods infringe, (*see id.* ¶¶ 55, 69), and that ZGI sold more than 650,000 of the infringing units and RRS sold many of these units to customers using the patented method, FootBalance has sufficiently pleaded direct infringement.

Second, the SAC shows by circumstantial evidence that the Moving Defendants specifically intended to encourage ZGI and RRS to infringe. Naturally, direct evidence of an alleged inducer's specific intent will often be impossible for a patentee to obtain at the pleading stage. "[S]pecific intent may, of course, be demonstrated by circumstantial evidence." *Kyocera Wireless Corp.*, 545 F.3d at 1354. The SAC states that "Louko and Kaakkola developed custom insoles based on FootBalance's patented products and the patented method of making FootBalance's patented products," (SAC ¶ 29), and that "ZGI's system of creating custom insoles is identical to FootBalance's system of creating custom insoles," (*id.* at ¶ 34). Additionally, the SAC indicates that both Moving Defendants were aware of the '433 and '589 Patents that covered FootBalance's insoles and customization system. In particular, Louko knew about the Patents "from his work at FootBalance" and Kaakkola knew about them because FootBalance engaged him in 2010 for a "research and development project to develop a new heater for FootBalance's custom insoles." (*Id.* at ¶ 36.) Kaakkola's dealings with FootBalance gave him "actual knowledge of the '433 Patent" and the "divisional application that led to the related '589 Patent." (*Id.* at ¶ 39.)

As to the Moving Defendants' inducement of ZGI, the SAC states that the individual defendants formed ZGI for the purpose of infringing, (*id.* at ¶ 13), and that "ZGI's only business is making and selling of custom insoles that infringe the '433 and '589 Patents," (*id.* at ¶ 33). FootBalance has pleaded facts showing that: (1) the Moving Defendants formed ZGI solely to sell the allegedly infringing custom insoles; (2) the products the Moving Defendants developed and marketed or used ZGI to develop and market essentially mimicked the invention of the '433 and '589 Patents; and (3) the Moving Defendants were aware of the '433 and '589 Patents, and therefore plausibly aware that by prompting ZGI to sell the insoles, they were encouraging ZGI to commit acts of infringement.

FootBalance has therefore shown that it is plausibly entitled to relief from Moving Defendants based on induced infringement.

Likewise, the SAC states that "Louko and Kaakkola provided infringing custom insoles to RRS and provided instructions and training to RRS employees to make custom insoles that violated the '433 and '589 Patents" and that the Moving Defendants "instructed" RRS on performing a "method of making custom insoles" that "infringe[d] the '589 Patent." (*Id.* at ¶ 30.)  Given what the SAC states the Moving Defendants knew about ZGI's products and FootBalance's patents, it is plausible that the Moving Defendants intended for RRS to directly infringe.

Accordingly, the Moving Defendants' MTD is **DENIED** with respect to FootBalance's inducement claim.

### B.     *Contributory Infringement*

"As with inducement, a corporation does not shield officers from liability for personally participating in contributory infringement." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1317 (Fed. Cir. 2010).  A party is liable for contributory infringement if he or she sells or offers to sell "a material or apparatus for use in practicing a patented process." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).  "That 'material or apparatus' must be a material part of the invention, have no substantial noninfringing uses, and be known (by the party) 'to be especially made or especially adapted for use in an infringement of such patent.'" *Id.* at 850–51 (citing 35 U.S.C. § 271(c); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)).  As with inducement, a patentee must show direct infringement by another. *See id.* at 850.

As indicated above, the SAC adequately pleads direct infringement.  In addition, the SAC details the Moving Defendants provision of "blanks"—or not yet customized insoles—which are then "manipulated in different ways by the store employee to achieve a custom fit." (SAC ¶¶ 30, 34.)  This manipulation, FootBalance indicates later in the SAC, is the method covered by FootBalance's patents. (*Id.* at ¶ 69.)  These blanks are a

"material or apparatus" that the SAC states Louko and Kaakkola provided to RRS. (*Id.* at ¶ 30.) The SAC further states that the insoles are made or adapted in such a way that they have "no substantially non-infringing uses." (*Id.* at ¶ 73.) While this statement is, in some sense, conclusory, the Court does not believe that FootBalance must list examples of noninfringing uses of which these blanks are not capable. Further, that the blanks provided are "custom insoles" supports the notion that they are not suitable for use as is, but instead only through a customization process. Also, the SAC's allegation that custom insoles are ZGI's entire business, and that these custom insoles are only delivered to end users by using the infringing method, further indicates that there is no substantial noninfringing use for these blanks. (*See id.* at ¶ 33.)

The SAC also demonstrates that the insoles the Moving Defendants provided are a material part of the invention. The custom insoles are an essential piece of the infringing method—without the insoles, there would be nothing to customize. (*See id.* at ¶ 69.)

The Court therefore **DENIES** the Moving Defendants' MTD with respect to FootBalance's contributory infringement claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Moving Defendants' MTD. Because FootBalance may be able to cure the deficiency, the Court **DISMISSES WITHOUT PREJUDICE** FootBalance's claims for direct infringement against Louko and Kaakkola and **DENIES** the MTD with respect to FootBalance's indirect infringement claims. FootBalance may file an amended complaint *within fourteen days* of the date this Order is electronically docketed. *Failure to file an amended complaint in this time may result in dismissal with prejudice of FootBalance's direct infringement claims as to the Moving Defendants.*

**IT IS SO ORDERED.**

Dated: October 4, 2016

Hon. Janis L. Sammartino
United States District Judge