UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOTBALANCE SYSTEM INC. and FOOTBALANCE SYSTEM OY,<br><br>Plaintiffs,<br><br>v.<br><br>ZERO GRAVITY INSIDE, INC.; ROADRUNNER SPORTS, INC.; ZENA IOVINA/IOVINO; PATRIK LOUKO; SASHA HANNON; and EERO KAAKKOLA,<br><br>Defendants. | Case No.: 15-CV-1058 JLS (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>(ECF No. 44) |

Presently before the Court is Defendants Patrik Louko and Eero Kaakkola's (collectively, the "Individual Defendants") Motion to Dismiss Third Amended Complaint, (MTD, ECF No. 44), as well as their Request for Judicial Notice, ("RJN," ECF No. 44-2). Also before the Court are Plaintiffs FootBalance Systems Inc. and FootBalance Systems OY's (collectively, "FootBalance") Opposition to, (ECF No. 47), and the Individual Defendants' Reply Supporting, (ECF No. 48), the MTD. The Court vacated the hearing on this motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 49.)

/ / /

For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Individual Defendants' MTD with respect to FootBalance's direct infringement claims.[1]

## BACKGROUND

### I. Factual Background

FootBalance is a health and fitness company that sells individually formed footwear. (TAC ¶ 14.) It owns U.S. Patent Nos. 7,793,433 and 8,171,589, both of which cover inventions related to custom orthotic insoles and a method for providing and customizing these insoles. (*Id.* ¶¶ 15–20.) Per an agreement entered into in December 2008, FootBalance sold these patented insoles to retailer Road Runner Sports, Inc. ("RRS"), which then sold them to consumers using FootBalance's patented method to custom fit the insoles to the consumers' feet. (*Id.* ¶ 24.) RRS later canceled this agreement to work with a different custom insole supplier, defendant Zero Gravity Inside, Inc. ("ZGI"). (*See id.* ¶ 25.)

ZGI was founded by, among others, Louko, one of the Individual Defendants, who also served as the company's president and chief executive officer. (*Id.* ¶¶ 4, 9, 53.) Before founding ZGI, Louko was a consultant and eventually chief executive officer at FootBalance, where he participated with RRS in selling FootBalance's products to RRS until he left the company in 2010. (*Id.* at ¶¶ 4, 9, 26, 28.) Kaakkola, the other Individual Defendant, is a former deputy board member of ZGI. (*Id.* at ¶ 5.) ZGI was incorporated on January 3, 2014. (*Id.* ¶ 32.)

ZGI's sales appear not to have been limited to RRS, however, as indicated by its sales figures that "exceed the number of custom insoles likely purchased by RRS." (*Id.* ¶ 35.) For example, ZGI announced that it sold 650,000 units in the year-and-a-half from

---

[1] The Court notes that the TAC groups its claims for relief by patent, rather than by particular theories of liability, such as liability for direct infringement, induced infringement, or contributory infringement. This Order refers to "claims" as "a set of facts that, if established, *entitle the pleader to relief*." James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:188 (Thomson Reuters/The Rutter Group 2016) (emphasis in original) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

1  May 2014 to November 2015. (*Id.*) Based on its own experience in the custom insole
2  market, that amount of sales "vastly outnumbers the sales RRS could generate during an
3  18-month window." (*Id.*)
4       FootBalance has arbitrated a dispute with RRS, and ZGI is not a party to that
5  arbitration. (*See id.* at 8, n.2.) FootBalance states that documents produced in that
6  arbitration show that ZGI, Louku, and Kaakkola had pre-suit knowledge of FootBalance's
7  patents, but that FootBalance cannot produce them in this litigation because they are
8  covered by a protective order and ZGI—although not a party to that protective order—has
9  objected to their use in this case. (*Id.*)

10  **II.   The Court's Prior Dismissal Order**

11       In its October 4, 2016 Order, the Court denied the Individual Defendants' MTD
12  insofar as it concerned FootBalance's claims for indirect infringement. ("SAC MTD
13  Order," ECF No. 39.) But the Court granted the Individual Defendants' MTD with regard
14  to FootBalance's direct infringement claims, finding that FootBalance failed to adequately
15  plead that the Individual Defendants directly infringed any of the patents either individually
16  or under a theory of agency or alter ego liability. (*Id.*) Additionally, the Court "applie[d]
17  the pleading standards explained in *Twombly/Iqbal* to FootBalance's direct infringement
18  claims." (*Id.* at 5.) Noting that FootBalance may be able to cure these deficiencies, the
19  Court granted leave to amend. (*Id.* at 15.)
20       FootBalance filed its Third Amended Complaint ("TAC") on October 21, 2016.
21  (ECF No. 41.) Individual Defendants filed their MTD on November 7, 2016. (ECF No.
22  44.)

23  <center>**REQUEST FOR JUDICIAL NOTICE**</center>

24       The Individual Defendants request that the Court take judicial notice of the
25  registration at the Finnish Patent and Registration Office and the Finnish Tax
26  Administration Business Information System for Zero Gravity Inside Oy. (RJN 2, ECF No.
27  44-2.) The Individual Defendants argue that Zero Gravity Inside Oy's registration is
28  relevant because it specifies the dates in which it was an active corporation in Finland, and

because FootBalance incorporated their counsel's correspondence concerning alleged infringement as Exhibit E to the TAC, which references that Kaakkola was a former board member of Zero Gravity Inside Oy. (*Id.*)

Although within the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Court generally may not consider matters outside of the pleadings, *see* Fed. R. Civ. P. 12(d), it is nonetheless "appropriate for the Court to take notice of 'relevant facts obtained from the public record . . . .'" *See Papasan*, 478 U.S. at 298; *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012) (noting that a court may "take judicial notice of undisputed matters of public record" and that "documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents" (citing *Lee v. City of L.A.*, 250 F.3d 668, 688, 689 (9th Cir. 2001))).

Under, Federal Rule of Evidence 201(b)(2), a court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Zero Gravity Inside Oy's registration is a government record, and thus its accuracy cannot reasonably be questioned. Additionally, FootBalance does not argue against taking judicial notice of this registration.

Accordingly, the Court **GRANTS** the Individual Defendants' Request for Judicial Notice. *See, e.g.*, *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033–34 (C.D. Cal. 2015) (taking judicial notice of business entity profiles retrieved from the California Secretary of State's website).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must dismiss complaints that "fail[] to state a claim upon which relief can be granted." The Court evaluates whether a complaint supports a cognizable legal theory and states sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In patent cases, courts previously looked to Federal Rule of Civil Procedure 84, which in turn referred to "forms in the

Appendix." *See Rembrandt Patent Innovations LLC v. Apple Inc.*, Nos. C 14-05094 (WHA), C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015); *In re Bill of Lading*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) ("[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control."). One form in the Appendix was Form 18, an example complaint for patent infringement that "merely included an allegation that the defendant infringed the asserted patent by making, using, or selling 'electric motors' without specifying the model of the accused motors." *Rembrandt Patent*, 2015 WL 8607390, at *2. The 2015 Amendments to the Federal Rules, which the Supreme Court submitted to Congress in April 2015 pursuant to 28 U.S.C. § 2072, abrogated Rule 84, with the notation that it was "no longer necessary." *See* Fed. R. Civ. P. 84 advisory committee's note to 2015 amendment; *RAH Color Techs. LLC v. Ricoh USA Inc.*, No. 2:15-CV-05203-JCJ, 2016 WL 3632720, at *2 (E.D. Pa. July 7, 2016). The 2015 Amendments took effect December 1, 2015. *See* Fed. R. Civ. P. 84; *RAH Color Techs. LLC*, 2016 WL 3632720, at *2.

The abrogation of Rule 84 means that the Rule 8 pleading standards as construed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) govern in patent cases. *See, e.g.*, *Rembrandt Patent*, 2015 WL 8607390, at *2; *Rah Color Techs. LLC*, 2016 WL 3632720, at *3 ("Following the reasoning of *In re Bill of Lading*, it appears the Federal Rules' amendment abrogating both Rule 84 and the Appendix of Forms means that claims of direct infringement are now also subject to the *Twombly*/*Iqbal* pleading standard."). This Court has already determined that the pleading standards explained in *Twombly*/*Iqbal* apply to FootBalance's direct infringement claims presented in its amended complaints. (*See* SAC MTD Order 5, ECF No. 39.)

Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) / / /

(quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### I. Direct Infringement by Individual Defendants

The Individual Defendants argue that FootBalance's claims against them must be dismissed because the TAC does not contain facts plausibly showing the Individual Defendants to be personally liable either through (A) acts of infringement not committed in the name of ZGI or (B) an alter ego theory. (*See generally* MTD, ECF No. 44.)

#### A. *Infringement Prior to ZGI's Incorporation*

The Individual Defendants argue FootBalance's TAC contains no well-pleaded facts showing Louko or Kaakkola directly infringed its patents before ZGI's incorporation. (*Id.* at 10.) As before, the Individual Defendants do not appear to argue in their MTD that the TAC does not allege that the accused products infringe FootBalance's patents or that it does not state a direct infringement claim against ZGI, but instead that the TAC does not *show* that the Individual Defendants made, used, offered to sell, or sold the allegedly infringing products before ZGI's incorporation, such that they would be individually liable for infringement. *See* 35 U.S.C. § 271(a).

As an initial matter, FootBalance responds that the "changes made to the Federal Rules do not alter the Federal Circuit's standards of pleading infringement." (Opp'n 9, ECF No. 47.) FootBalance also cites a January 15, 2016 district court opinion applying pre-abrogation of Form 18 pleading standards. (*Id.* (citing *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 14-772, 2016 U.S. Dist. LEXIS 5426, at *7–8 n.1 (D. Nev. Jan. 15, 2016)).) But on October 4, 2016, the Court informed the parties that it "applies the pleading standards explained in *Twombly/Iqbal* to FootBalance's direct infringement claims . . . ." (SAC MTD Order 5, ECF No. 39.) And this Court has recently explained, weeks before FootBalance filed its opposition, that "in order to properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege that a defendant directly infringes each

limitation in at least one asserted claim."[2] *Scripps Research Inst. v. Illumina, Inc.*, No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016). This directive is inconsistent with—and thus the Court rejects—FootBalance's reliance on *Hologram*.

The Federal Circuit recently emphasized "the particular need to apply the plausibility standard with a recognition that direct evidence of some facts . . . may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence." *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 988 (Fed. Cir. 2014) (citing Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 679; *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 & n.15 (2011)).

Whether Louko or Kaakkola made, used, offered to sell, or sold the allegedly infringing insoles or instructed retailers as to the allegedly infringing custom fitting process before ZGI incorporated in January 2014 is largely information within the Defendants' possession. Using publicly available information, however, FootBalance claims that the following allegations plausibly demonstrate that the Individual Defendants infringed the patents before ZGI was incorporated:

- The Individual Defendants had access to FootBalance's custom insole technology years prior to ZGI's incorporation. (TAC ¶¶ 26–27, 40, ECF No. 42.)
- "ZGI . . . sold more than 650,000 units" of the allegedly infringing product from May 2014 to November 2015. (*Id.* ¶ 35.)
- "Based on FootBalance's sales of custom insoles to RRS, as well as RRS' footprint and FootBalance's knowledge of the US market, the 650,000 units purported[ly] sold by ZGI vastly outnumbers the sales RRS could generate

---

[2] Though the Court notes that the Individual Defendants do not appear to argue that Plaintiff's TAC should be dismissed on this basis. Accordingly, the Court does not assess whether the TAC plausibly demonstrates that the Individual Defendants infringed every element of at least one claim of an asserted patent.

during an 18-month window." (*Id.*)

- Based on FootBalance's experience in the market, it takes many months to develop the equipment to make the patented insoles, (*id.* ¶ 36), and thus the Individual Defendants were necessarily practicing the invention prior to the incorporation of ZGI on January 3, 2014, (*id.* ¶¶ 32, 34, 37–39).

(*See also* Opp'n 12, ECF No. 47.) This time around, the Court finds that the TAC presents sufficient "circumstantial" factual allegations to which the Court may apply "the threshold standard of plausibility." *ABB Turbo Sys. AG*, 774 F.3d at 988. Specifically, FootBalance has alleged that, based on its experience, it would take "many months" to independently develop the equipment used for creating the patented custom insoles, which plausibly suggests that the Individual Defendants were practicing the patent before ZGI was incorporated. While Defendants urge the Court to reject this allegation as conclusory, (Reply 7, ECF No. 48), the Court accepts as true FootBalance's contention that it has significant experience in this market and thus credits its allegation that it would take many months to develop the requisite equipment.

Defendants also argue that "Plaintiffs cite no case law in support of their position that facts related to a different and unrelated entity can be substituted in lieu of factual allegations pertaining to the particular defendants against whom a claim has been brought." (*Id.* at 6.) But Defendants misunderstand the burden on a Motion to Dismiss—to the extent any authority exists counseling the Court to reject FootBalance's allegations, Defendants should have brought it to the Court's attention. Absent any authority to the contrary, the Court finds these allegations sufficient to plausibly suggest that the Individual Defendants directly infringed FootBalance's patents prior to the incorporation of ZGI.[3]

/ / /

---

[3] For this reason, the Court need not reach FootBalance's alternative argument that the Individual Defendants' personal use of allegedly infringing insoles also supports a theory of direct infringement.

Finally, the Individual Defendants argue that FootBalance fails to discount the inference that the Individual Defendants were protected against direct infringement liability by their relationship with Finnish corporation Zero Gravity Inside Oy prior to the incorporation of ZGI. Specifically, FootBalance's counsel wrote to ZGI stating "[w]e understand Mr. Kaakkola to be a former deputy board member of the related Finnish entity, Zero Gravity Inside Oy." (TAC Ex. E, ECF No. 42.) Zero Gravity Oy was a registered Finnish corporation from January 14, 2013 through October 16, 2013. (RJN, ECF No. 44-2; MTD Mem. 15, ECF No. 44-1.) Thus, FootBalance has "fail[ed] to plead any facts showing the Individual Defendants were not subject to the Finnish corporation's protections prior to January 2014." (MTD Mem. 12, ECF No. 44-1.)

This argument fails for at least two reasons. First, as FootBalance points out, there is no mention of Louko in this letter, so this alleged inference does not affect him. (Opp'n 13, ECF No. 47.) Second, Zero Gravity Oy's corporate registration ended on October 16, 2013, and ZGI was incorporated on January 4, 2014. That leaves two-and-a-half months where Kaakkola was not, as the Individual Defendants put it, under the "protections" of Zero Gravity Oy. Thus, FootBalance's allegation that it took the Individual Defendants "many months" to develop the equipment to create infringing insoles plausibly encompasses October 16, 2013 through January 4, 2014. Accordingly, FootBalance has adequately alleged direct infringement against Louko and Kaakkola based on infringement before ZGI's incorporation or otherwise committed outside of their involvement with ZGI.

### B.   Alter Ego Liability

FootBalance also alleges that ZGI is simply Louko and Kaakkola's alter ego, and that they should not be shielded from individual liability by the corporate veil.

When officers of a corporation are charged with direct infringement, "the 'corporate veil' shields" them from personal liability for acts they "commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (citing *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007)). In patent cases, federal

district courts apply the alter ego law of the regional circuit. *See Wechsler*, 486 F.3d at 1295 (citing *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004)). The Ninth Circuit applies the law of the forum state to determine whether a corporation is the alter ego of an individual. *See id.* (citing *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993)). Thus, this Court looks to California alter ego law.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). "A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Id.* (citing *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971)). California courts have stated that "[t]he purpose behind the alter ego doctrine is to prevent defendants who are the alter egos of a sham corporation from escaping personal liability for its debts." *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (citing *Hiehle v. Torrance Millworks, Inc.*, 272 P.2d 780, 783–84 (1954)). There are two separate requirements to justify imposing alter ego liability:

> First, that the corporation is not only influenced and governed by [the defendant], but that there is such a unity of interest and ownership that the individuality, or separateness, of the said [defendant] and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis removed) (citing *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977)); *see also Sonora Diamond Corp.*, 83 Cal. App. 4th at 538.

Nonexclusive "[f]actors that can be used to support the first element, unity of interest, include commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two

entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and the failure to adequately capitalize a corporation." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (citing *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (1962)). "The second element requires that an inequitable result occur by the recognition of the corporate form." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539. "Alter ego is an extreme remedy, sparingly used." *Id.* at 539. Courts look to "all the circumstances to determine whether the doctrine should be applied." *Id.*

Following the Supreme Court's instructions in *Iqbal*, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. As with the deficient SAC, the TAC again pleads the following conclusions:

- "ZGI operates as the alter ego of Louko"
- "ZGI and Louko have a unity of interest and ownership such that ZGI is not a separate entity from Louko."
- "FootBalance would face an inequitable result if the actions taken by Louko would be treated as ZGI's alone."
- "ZGI has identical equitable ownership as Louko, as ZGI is controlled and dominated by Louko."
- "ZGI disregards corporate formalities."
- "Upon information and belief, ZGI does not conduct regular board meetings, does not conduct regular shareholder meetings, and does not issue stock."[4]
- "Louko uses ZGI corporate accounts and assets for personal purposes."
- "ZGI has been and continues to be undercapitalized. Upon information and belief, ZGI lacks sufficient capital to cover debts, including liability from its infringement

---

[4] The "factors" courts consider in the alter ego doctrine necessarily look for the presence of certain "facts." Pleading the presence of a factor, therefore, on some level pleads the existence of a fact. While in some circumstances, an allegation that a corporation does not hold board meetings may fall into the "well-pleaded fact" category rather than the "conclusory statement" category, its inclusion among a list of other conclusory allegations evidences a lack of specificity that does not advance FootBalance's alter ego theory from merely possible to plausible.

of the '433 and '589 Patents."
- "Upon information and belief, Louko lacked sufficient capital to start ZGI. Upon information and belief, ZGI continues to lack minimal capitalization."
- "Louko uses ZGI as a mere shell for his personal business."

(TAC ¶¶ 52–56.) The only new addition to this list from the SAC seems to be that "Louko helped or directed his wife, Ms. Iovina/Iovino, to found ZGI. For example, while Ms. Iovina/Iovino is listed in state filings as the CEO of ZGI, she has no such role and Louko is the CEO." (*Id.* ¶ 54.)

The distinction between mere conclusions or recitations of elements and well-pleaded facts can, at times, be elusive. The majority of these allegations, however, simply mimic the factors courts consider when determining whether to pierce the corporate veil, and stated in that manner are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679. As before, these allegations lack any sort of case-specific detail that demonstrates, for example, that ZGI is not adequately capitalized to meet its financial obligations, or instances in which Louko used ZGI's corporate accounts for personal purposes.

The two ostensibly well-pleaded facts FootBalance alleges to bear out these conclusions are insufficient to state a claim for alter ego liability. First, as before, FootBalance alleges that "[p]ublicly available financial information indicates that Louko withdrew approximately 1.2 million EUR" and Kaakkola "withdrew approximately 700,000 EUR from ZGI within a year of ZGI's incorporation." (TAC ¶ 56.) The TAC indicates that this withdrawal "represents a substantial portion of ZGI's operational revenue from 2014 and exceeds ZGI's profits for 2014." (*Id.*) However, "when determining whether inadequate capitalization exists such that alter ego liability would be appropriate, courts generally look to facts or allegations related to an entity's liabilities and assets." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1142 (C.D. Cal. 2015). This sort of context is necessary to understand why a withdrawal of that amount would render a corporation inadequately capitalized. *See id.* The Court explained the deficiencies of this allegation to FootBalance in the Court's previous Order, (*see* SAC MTD Order 11–12,

ECF No. 39), but FootBalance chose to allege no facts supporting a theory of undercapitalization. That Louko and Kaakkola collectively withdrew an amount that exceeds ZGI's profits for the year does not plausibly warrant the "extreme remedy" of imposing alter ego liability. (*See also id.* (recognizing Defendants' alternate theory that "Louko may have simply loaned ZGI start-up funds and is entitled to repayment").) Thus, even if the Court were to credit FootBalance's new and second well-pleaded fact that listing Ms. Iovina as the CEO in state filings is somehow consequential because she is not, actually, the CEO, this allegation—standing alone, which it must, given the deficiency of FootBalance's remaining allegations—is not enough to open the doors to discovery for alter ego liability. The Court reminds FootBalance that while this information is obviously difficult to obtain, it must be able to articulate facts—whether based on circumstantial or direct evidence that it has uncovered—plausibly supporting a conclusion of alter ego liability.

The Court previously explained to FootBalance that a complaint tells a story of liability. (*See id.* at 15 ("As in other storytelling, showing is often more important than simply telling.").) But, as before, FootBalance has simply *told* the Court that the Individual Defendants are liable under an alter ego theory, but it has not *shown* they are liable. The Individual Defendants' MTD is therefore **GRANTED** with respect to FootBalance's claims for direct infringement under an alter ego theory of liability.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Individual Defendants' MTD. The Court **GRANTS** Individual Defendants' MTD as to FootBalance's claim of direct infringement against the Individual Defendants under an alter ego theory of liability. While the Court entertains doubts that FootBalance will be able to cure its pleading deficiencies, the Court **DISMISSES WITHOUT PREJUDICE** FootBalance's claims for direct infringement against Louko and Kaakkola under an alter ego theory of liability. Additionally, the Court **DENIES** the MTD with respect to FootBalance's claim for direct infringement against the Individual Defendants prior to the

incorporation of ZGI. FootBalance may file an amended complaint <u>within fourteen (14) days of the date this Order is electronically docketed</u>. *Failure to file an amended complaint in this time may result in dismissal with prejudice of FootBalance's alter ego direct infringement claims as to the Individual Defendants.*

**IT IS SO ORDERED.**

Dated: April 3, 2017

Hon. Janis L. Sammartino
United States District Judge